UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


In re:

SIMPLER SOLAR SYSTEMS, INC.,                    Case No. 11-40909
                                                 Chapter 11
       Debtor.

_____


SIMPLER SOLAR SYSTEMS, INC.,

       Plaintiff,

v.                                               ADV. PRO.  NO. 11-04029

RENITTA KNIGHT CONSTRUCTION, LLC,                4:12cv468-WS
RENITTA KNIGHT, a/k/a/ RENITTA LUNDY,

       Defendants.

_____


ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      The plaintiff, Simpler Solar Systems, Inc. ("Simpler"), sues the defendants,

Renitta Knight Construction, LLC, and Renitta Knight (collectively "RKC") for breach of

contract.  Before the court at this time are the parties' cross-motions for summary

judgment.  Docs. 58 & 80.

BACKGROUND

A.

      This case began as an adversary action filed in the United States Bankruptcy

Court for the Northern District of Florida on December 9, 2011.  In that adversary action,

Simpler Solar Systems, Inc. ("Simpler"), as debtor-in possession in bankruptcy, sued

Renitta Knight Construction, LLC, and Renitta Knight (collectively "Defendants"),

seeking—among other things—payment for work Simpler performed pursuant to the

parties' sub-subcontract requiring Simpler to install a solar system for the project known

as the Tallahassee Regional Airport Water Intrusion Project (the "Airport Project").  With

the exception of future warranty work, if any, and minor items identified in a "punch list,"

Simpler completed its work on the Airport Project—without complaint—on October 31,

2011.  By that time, RKC had paid Simpler a first draw of $69,004.89 for its work.

Although RKC requested and received lien releases from Simpler on or about

November 7, 2011, RKC thereafter refused to make any further payments to Simpler.

Instead, RKC sent Simpler a letter dated November 23, 2011, explaining that RKC was

revoking the sub-subcontract based on Simpler's bankruptcy filing.  In its adversary

complaint, Simpler alleged that Defendants owed the company a total of $81,226.21 for

the Airport Project.

On December 12, 2011, Bankruptcy Judge Lewis M. Killian, Jr., held a contempt

hearing, at which Renitta Knight ("Knight"), as the sole member of RKC, testified.

Knight explained that her letter of November 23, 2011, revoking the sub-subcontract

with Simpler, was based on a provision in the contract that permitted RKC to terminate

the contract upon the filing of a bankruptcy action by Simpler.  In fact, the sub-

subcontract contains no such provision.[1]  Knight also suggested for the first time that,

although the contractor, Sperry and Associates, Inc. ("Sperry"), had paid her for the

---

[1] In contrast, the subcontract between RKC and Sperry did contain such a
provision.

work done by Simpler (with the exception of retainage), she was not required to pass those monies on to Simpler because the sub-subcontract was purportedly unenforceable by Simpler pursuant to Florida Statute § 489 (making contracts entered into by an unlicensed contractor unenforceable by that unlicensed contractor).  After hearing from Knight and several other witnesses, including Simpler, Judge Killian entered an order (1) finding RKC in willful violation of the automatic stay; (2) declaring that Defendants' termination of Simpler's sub-subcontract was void and of no effect; and (3) setting a hearing on Simpler's request for injunctive relief to be held the following week.  Among other things, Judge Killian explained in open court that "the law is clear under 11 U.S.C. § 365E that a party is prohibited from terminating a contract solely because of the existence of a clause in the contract which provides for termination based on insolvency or the commencement of the case under this title."

On December 15, 2011, three days after the contempt hearing, Simpler filed a first amended complaint in the bankruptcy court, alleging that RKC owed Simpler $48,963.39 rather than $81,226.21.  The sum alleged in the first amended complaint represented the difference between $81,226.21 and the payments ($32,262.82) made by RKC to vendors that were under contract to Simpler.  Also on December 15, 2011, Knight filed a notice of RKC's dissolution effective December 14, 2011.

Judge Killian resumed the evidentiary hearing on December 19, 2011, to consider Simpler's request for injunctive relief.  Knight did not appear at the hearing. Michael Bist, as counsel for the contractor, Sperry and Associates, Inc., did appear, explaining to the judge that Knight had signed "a lien release saying that all of the subs were paid."  The following colloquy ensued:

THE COURT:          Which was, apparently, false.

MR. BIST:           I don't know, Your Honor.

THE COURT:          The gist of this whole proceeding appears to be that Renitta Knight Construction, LLC, has been paid for this project.

MR. BIST:           Yes, sir.

THE COURT:          And from all appearances, she's decided that she's going to keep the money and not pay the party who did all of the work. . . . Well, that's what she said last week.  She basically said, I'm not paying them a dime. She's taken all of the money—she's testified that she's taken the money she received from Sperry and taken it out of Renitta Knight and placed it in her own personal savings account without paying Simpler Solar Systems any of the money that they have claimed was due after she obtained from them the lien releases that you received.

                    . . . .

MR. BIST:           There is also approximately $23,000 being held as retainage, which Sperry has not been paid yet by the City, is my understanding.  When Sperry is paid that, they would pay Renitta Knight that.  So, I request there be some order entered.

THE COURT:          I will place in an order prohibiting Renitta Knight or Renittal Knight Construction from receiving any further funds from this construction project until such time as these issues are resolved.

On December 20, 2011, Judge Killian entered an order (1) enjoining RKC and

Knight from "removing, transferring, or conveying funds due [Simpler] for Project #10-

1003, Tallahassee Regional Airport Intrusion Project," and (2) directing Sperry to

withhold any further payments to Defendants for work performed by Simpler on the

Airport Project.  On Defendants' motion for rehearing, in an order modifying his

preliminary injunction order, Judge Killian ordered the Sunshine Savings Bank to

transfer roughly $36,000 in funds belonging to RKC and Knight to the trust account of

Defendant's counsel, in effect freezing a portion of the disputed monies.  Today, those

monies are being held in the court's registry.  Additional funds are being held by Sperry.

On May 9, 2012, Judge Killian conducted another evidentiary hearing.  Among

other things, Simpler's counsel asked Renitta Knight the following questions:

> Q:    In terms of the status of the contract as of November 10
>       [2011] when the bankruptcy was filed . . . you were satisfied
>       at that date that it was substantially complete I think is what
>       you testified?
>
> A:    Correct.
>
> Q:    And is it also fair that you would have paid in full —
>
> A:    That's correct.
>
> Q:    —the amount owed under that contract but for the licensing
>       issue?
>
> A:    Correct.
>
> Q:    So you weren't going to set off any, if there was additional
>       work that needed to be done it was not your intent to set that
>       off?
>
> A:    Correct.

Doc. 47, Ex. 18.

After Simpler requested—and was granted—leave to file a second amended

complaint, Defendants filed a motion for withdrawal of reference.  The motion was

granted, and the case has since been litigated in this court.

## B.

Currently before this court is Simpler's third amended complaint, seeking monies

allegedly owed to Simpler pursuant to its sub-subcontract with RKC.  The parties have

filed cross-motions for summary judgment that are ripe for review.  The documents filed in support of those motions reveal the following:

Sperry was the general contractor for the Airport Project.  Jon Savoy was the Project Manager, acting as Sperry's authorized representative on the Project.  In September 2010, Sperry prepared a subcontract ("2010 Subcontract") based upon Project requirements and RKC's proposal for the Project.  Although requested by the court, RKC's proposal has not been made a part of this record.

Section 1.11 of the 2010 Subcontract set forth a contract price of $121,800.00.  Jon Savoy signed the 2010 Subcontract on behalf of Sperry on September 8, 2010.  Renitta Knight signed the 2010 Subcontract on behalf of RKC on September 10, 2010, noting some changes in red.  In particular, Knight crossed out a portion of the language in section 2.3 which described the scope of work.  The crossed-out language was:

~~PV/ELECTRICAL SYSTEM RISER THROUGH THE AC DISCONNECT, LCD DISPLAY INCLUDING LOW VOLTAGE~~.

Documents in the record suggest that Knight crossed out the above language because "everyone agreed . . . [that] the electrical could not be run as the plans suggest because the chase is not there."  Doc. 47, Ex. 4.  As explained by Knight:

> [T]hree months prior to my signing the contract with [Sperry], my team previously began seeking a more viable solution for the installation of [the] system due to a telephone conversation with Jon Savoy asking for the cost to run the electrical per plans to complete the system, which he notice[d] my bid did not include.  This is when my team made many visits to the airport, met with airport staff, and Preston [job inspector] of Sperry & Associates. . . . I did not include the electrical in my bid. . . . There was no way the electrical could be run as per plans and I would have been bidding on the unknown.

Id.

Other documents reveal that, on September 2, 2010, a week before the 2010 Subcontract was signed, Savoy, Knight, Al Simpler (owner of Simpler), and Joseph Sierra (Simpler's electrical contractor) met to discuss the project. Doc. 59 at p. 2. Several days later, again before the 2010 Subcontract was signed, Sierra submitted his material costs for the electrical work on the Project. On September 28, 2010, soon after the 2010 Subcontract was signed, Knight, Al Simpler, Joseph Sierra, Preston (Sperry's job inspector), and Ted Fauler, the Tallahassee Regional Airport Head Electrician, met to discuss problems with the electrical plans. It seems clear that, when the 2010 Subcontract was signed by Savoy and Knight, they both knew that the electrical specifications, or at least a portion thereof, required changes and were still evolving.

On September 20, 2010, based on the 2010 Subcontract between RKC and Sperry, RKC and Simpler entered into a sub-subcontract ("2010 Sub-subcontract") in the amount of $107.999.00. The 2010 Sub-subcontract contained the following provision:

> THIS CONTRACT AMOUNT IS FOR WORK DESCRIPTION FOUND IN SIMPLER SOLAR SYSTEMS, INC. ESTIMATE DATED 2/11/2010. CONTRACT AMOUNT SHALL CHANGE PURSUANT TO ADDITIONAL COST FOR PV/ELECTRICAL SYSTEM RISER THROUGH THE AC DISCONNECT, LCD DISPLAY INCLUDING LOW VOLTAGE, ADDITIONAL ELECTRICAL, AND ANY OTHER CHANGES OR MODIFICATIONS TO THIS CONTRACT OR THE CONTRACT BETWEEN THE SUBCONTRACTOR AND THE PRIME CONTRACTOR.

Doc. 47, Ex. 2, § 2.2. When Simpler entered into the 2010 Sub-subcontract, Joseph Sierra was licensed by the Florida Department of Business and Professional Regulation as Simpler's qualifying agent.

In reliance on the 2010 contracts, and consistent with the time-is-of-the-essence

provision in the Subcontract, Simpler immediately began work on the Project, designing plans, attending required meetings, and ordering materials for the needed photovoltaic system. Indeed, all parties were active on the Project throughout the fall of 2010. In a Request for Information ("RFI") submitted on October 12, 2010, by Sperry to Reynolds, Smith and Hills, Inc. (the architect/engineer for the Project), Sperry stated: "Three RFI's and several site visits have been performed to date asking several questions relating to the existing conditions and overall design of the PV system." Doc. 97, Ex. A at p. 2. The architect/engineer responded as follows:

> It is confirmed that the site was walked with TLH staff, Sperry and Simpler Solar and that the PV panels and equipment (inverter, disconnects, combiner box) be relocated in accordance with the memo "Request for Change in PV Installation" provided by Simpler Solar. . . . The final location of the solar monitoring display as shown on sheet A510 and E210 shall be reviewed with all parties at the final meeting to review the PV system. The PV meeting will take place before or after a weekly review meeting.

Id. It thus appears that all parties were contemplating a change to the electrical plans and were moving forward accordingly on the Project.

In November 2010, more than two months after the two contracts were executed and while work was well underway, Bart Wells, Sperry's Executive Vice President, advised Knight that Sperry and RKC did *not* have a valid Subcontract for the Project, claiming that RKC had made material changes to the contract, in effect making a counter offer that was never accepted by Sperry. Knight responded, in part, as follows:

> Sperry & Associates had my contract for more than thirty (30) days before contacting me to let me know that you were not in agreement with the terms of the contract Jon Savoy signed September 9, 2010, and I signed on September 10, 2010. Not being notified by your company of any disagreement with the contract and its attachment (which are now part of the contract), I then went into contract with Simpler Solar . . . and as of this

date have not released this company from the contract. . . . My position is Sperry & Associates could have chosen to contract with other alternatives that included the electrical in their bid price, or contact me to see why I did not include the electrical, or ask if I would give you a bid that included electrical. . . . No one paid attention to my bid. . . . Sperry & Associates and [RKC] still have a standing contract that is based on my company's April 20, 2010 bid numbers.  My team is still willing to do exactly what my bid states we will do for $121,800.00. . . . My team has invested time and money in this project already.  We were treated as part of the project by being required to attend safety and security classes, paying for badges . . . , locating the best location for the installation of the PV systems, and administrative cost. . . . RS&H (architect/engineer) has now incorporated revised drawing of the plans, which I commission[ed] from Mr. Simpler to be used by our team. . . It seems from my public records request . . . our revisions have been approved by RS&H, which constitutes a change order and funds have to be made available to you for these changes (especially since the non-existing chase is part of the City of Tallahassee['s] original plans).

Doc. 59, Ex. 2.

After much back and forth negotiation, RKC and Sperry entered into a revised subcontract on May 24, 2011 ("2011 Subcontract").[2]  With the exception of a new contract price ($169,875.00) and a $5,000 allowance for the required electrical conduits, the 2011 Subcontract differed little from the 2010 Subcontract.  On May 31, 2011, Simpler and Knight likewise entered into a revised sub-subcontract (the "2011 Sub-subcontract).  The 2011 Sub-subcontract set the contract sum at $149,875.10 (including the $5,000 allowance for electrical conducts) but noted that "THERE WILL BE A CHANGE IN CONTRACT SUM AFTER CHANGE ORDER FOR PHOTOVOLTAIC SYSTEM REVISIONS ARE APPROVED."

Meanwhile, unbeknownst to Simpler, RKC, or Sperry, Joseph Sierra contacted

_____

[2]  The 2011 Subcontract was signed by Jon Savoy on May 23, 2011, and by Renitta Knight on behalf of RKC on May 24, 2011.

the Florida Department of Business and Professional Regulation ("DBPR") in March 2011, requesting that his electrical contractors' license, # EC13004352 for Simpler Solar Systems Inc., be placed on inactive status.  On March 24, 2011, DBPR advised Sierra that, if he no longer wished to be a qualifier for Simpler, his license would have to be placed on Null & Void Status, not merely inactive status.  On March 30, 2011, Sierra advised DBPR to set his license # EC13004352 to null and void status.  DBPR records show that Sierra's license was effective until April 6, 2011, when it became null and void.

The record is not clear as to when Simpler received actual or constructive notice regarding Sierra's change in licensure status.  Sharon Piepmeier, Simpler's President, has declared that (1) "Joseph Sierrra never provided [Simpler] with an actual Notice of Termination as required by Florida Statute § 489.522;" and (2) "[a]t the time the 2011 Contract was entered into, Simpler had still not received a Notice of Termination from its qualifying agent Joseph Sierra."  Doc. 59, ¶¶ 18, 22.  The record contains a copy of a typewritten one-sentence unsigned letter dated March 4, 2011, to Sharon Piepmeier from Joseph Sierra, notifying Piepmeier that Sierra's license #EC13004352 became null and void on March 28, 2011 (in fact, Sierra's license became null and void on April 6, 2011).  Doc. 80, Ex. 2.  The record otherwise contains no competent evidence to establish when, how, or if this letter was sent to or received by Piepmeier.

In December 2011, after Simpler completed the bulk of its work on the Airport Project, Knight filed a complaint with DBPR, alleging that Simpler entered into the 2011 Sub-subcontract when it was purportedly operating in an unlicensed capacity.  Doc. 90-3.  After reviewing the evidence submitted by Knight, DBPR issued a Notice to Cease

and Desist to Piepmeier on December 12, 2011.  DBPR later advised both Knight and

Piepmeier that Simpler was found to have engaged in unlicensed activity as alleged.

Doc. 90-4.  On August 20, 2012, upon receiving Piepmeier's request for

reconsideration, DBPR advised Piepmeier as follows:

> There is not a final order that finds you guilty of unlicensed activity.
> Instead, the Department closed the case against you after issuing a notice
> to cease and desist.  Pursuant to Section 455.228(1), Florida Statutes, the
> issuance of a notice to cease and desist does not constitute agency action
> for which a formal hearing or reconsideration may be sought.  Further
> review of the case is not warranted.

Doc. 85.

## C.

Simpler contends that (1) its 2010 Sub-subcontract was a valid contract; (2) its

2011 Sub-subcontract constituted a revision or modification of the 2010 contract; (3) the

company had a licensed qualifying agent when it executed its 2010 Sub-subcontract;

and (4) the company had not received notice regarding the voiding of Sierra's license

when it executed the 2011 Sub-subcontract.  In contrast, Defendants contend (1) that

the 2010 Sub-subcontract was not a valid contract because there was never a meeting

of the minds about the underlying 2010 Subcontract between Sperry and RKC; (2) the

2011-Sub-subcontract was executed when Simpler did not have a qualifying agent for

purposes of Florida Statute § 489.128; and (3) Simpler is precluded from seeking

enforcement of its 2011 Sub-subcontract based on § 489.128.  For the reasons

explained below, the court finds that Defendants' arguments are without merit.

## ANALYSIS

Florida Statute § 489.128 provides:

(1) As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.

(a) . . . A business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract.

. . . .

(c)  For purposes of this section, a contractor shall be considered unlicensed only if the contractor was unlicensed on the effective date of the original contract for the work, if stated therein, or, if not stated, the date the last party to the contract executed it, if stated therein.  If the contract does not establish such a date, the contractor shall be considered unlicensed only if the contractor was unlicensed on the first date upon which the contractor provided labor, services, or materials under the contract.

According to Defendants, section 489.128(1) makes Simpler's 2011 Sub-subcontract unenforceable because Sierra ceased to be a qualifying agent before that contract was executed on May 31, 2011.  Defendants maintain that the 2010 Sub-subcontract does not control because it was "invalid" given the purported failure of Sperry and RKC to reach a "meeting of the minds" about the underlying 2010 Subcontract.  The court finds Defendants' arguments flawed for several reasons.

Section 489.128 specifically provides that "a contractor shall be considered unlicensed only if the contractor was unlicensed on the effective date of the *original* contract for the work, if stated therein, or, if not stated, the date the last party to the contract executed it, if stated therein."  Id. § 489.128(1)(c) (emphasis added).  Renitta Knight, the last party to sign, executed the 2010 Sub-subcontract on September 10, 2010.  There is no dispute that, on September 10, 2010, Joseph Sierra was Simpler's qualifying agent, that his license was then current, and that he was then actively

involved in the Airport Project.  Defendants do not suggest that there was no meeting of the minds between Simpler and RKC when they executed the 2010 Sub-subcontract. Indeed, for weeks—even months—afterwards, both parties conducted themselves as though a valid contract existed.

The underlying 2010 Subcontract was executed by Knight and Sperry's authorized agent early in September 2010.  For many weeks thereafter, no complaint was made that the 2010 Subcontract was invalid because there was no meeting of the minds between Knight and Sperry.  In fact, just the opposite was suggested by the conduct of all parties involved.

"A valid contract arises when the parties' assent is manifested through written or spoken words or *inferred in whole or in part from the parties' conduct.*"  Baron v. Osman, 39 So. 3d 449, 451 (Fla. 5th DCA 2010) (internal quotation marks omitted and emphasis added); see also Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (explaining that "[a] contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words"); Id. at 386 (noting that "[c]ommon examples of contracts implied in fact are when a person performs services at another's request, or whether services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid") (internal quotation marks omitted).

Here, whether or not Sperry and RKC had a valid *express* contract in September of 2010, Simpler was entitled to presume, based on the conduct of all parties

concerned, that his 2010 Sub-subcontract was valid and that he would be compensated

for the work he performed thereunder.  Because Simpler had a qualifying agent at the

time the "original contract" was executed, Defendants cannot rely on section

489.128(1)(3) to avoid paying Simpler monies owed under the 2010 Sub-subcontract,

as amended by the 2011 Sub-subcontract.

Furthermore, even *if* the 2010 contracts were deemed invalid, there is no

evidence before this court that, before the 2011 Sub-subcontract was executed, Sierra

gave actual notice of a change in his qualifying status to Simpler.  Under Florida law:

> A qualifying agent who has been designated by a joint agreement as the
> sole primary qualifying agent for a business organization may terminate
> this status as such by giving *actual notice* to the business organization, to
> the board, and to all secondary qualifying agents of his or her intention to
> terminate this status. The notice to the board shall include proof
> satisfactory to the board that he or she has given the notice required in
> this paragraph. The status of the qualifying agent shall cease upon the
> designation of a new primary qualifying agent or 60 days after *satisfactory
> notice of termination* has been provided to the board, whichever first
> occurs.

Fla. Stat. § 489.522(3)(a) (emphasis added).  Piepmeier has sworn that Simpler never

received actual notice from Sierra.[3]  There is no competent evidence in the record to

refute her sworn statement.  In addition, there is no competent evidence in the record

establishing when, or if, the FBPR received "satisfactory" proof that Sierra provided

Simpler with actual notice of his intent to terminate his qualifying status.  Given the

absence of proof regarding Sierra's compliance, if any, with the notice requirement's of

section 489.522(3)(a), and given that the status of a qualifying agent does not cease

---

[3]  In a submission to DBPR, Piepmeier wrote that DBPR's "licensing Web Portal continued to show a Current Electrical License status . . . through May of 2012."  Doc. 90-1 at 4.

until "60 days after satisfactory notice of termination has been provided to the [FBPR],"[4] the court is unable to conclude that section 489.128 precludes Simpler from enforcing the terms of either its 2010 Sub-subcontract or its 2011 Sub-subcontract.

As Judge Killian expressed it, this "whole case" is about Renitta Knight's claim that she "doesn't have to pay for the work that she received and she got paid for." Doc. 47, Ex. 17. This court rejects Knight's claim, finding instead that RKC and Knight have breached the 2010 and 2011 Sub-subcontracts by failing to pay Simpler for work done pursuant to those contracts.

Simpler requests that judgment be entered in its favor in the amount of $57,287.08 (($144,875.10 + $5000.00) - $69,004.89 = $80,870.21 - $23,583.12 = $57,297.08).[5] Defendants have not addressed whether Simpler's $57,287.08 figure is accurate; they simply contend that, under Florida Statute § 489.128, they owe Simpler nothing. Judgment will accordingly be entered in the amount requested.

---

[4] Under the terms of § 489.522(3)(a), "satisfactory notice of termination" to the FBPR includes "proof satisfactory" that the qualifying agent has given the required "actual notice" to the business organization.

[5] At a hearing before Judge Killian on December 19, 2011, Al Simpler testified that Defendants made vendor payments on behalf of Simpler in the total amount of $21,758.13 ($292.50 + $8,580.00 + $12,885.63). Doc. 19 in Bankruptcy Case No. 11-04029-KKS, at p. 8). At an earlier hearing, Renitta Knight testified that RKC paid three vendors a total of $31,573.08 ($292.50 + $17,314.95 + $13,965.63). Doc. 32 in Bankruptcy Case No. 11-04029-KKS, at pp. 29-30. Al Simpler disputed Knight's figures, explaining that Knight included in her figures amounts that Simpler did not owe its vendors. Simpler now reports a higher figure—$23,583.12—for vendor payments than he previously reported, although his current figure is less than the figure reported by Knight. In the absence of proof that Defendants are entitled to a larger set-off for payments made on Simpler's behalf, the court accepts Simpler's current set-off figure of $23,583.12.

It is ORDERED:

1.  Simpler's motion for summary judgment (doc. 58) is GRANTED.

2.  Defendants' motion for summary judgment (doc. 80) is DENIED.

3.  The clerk shall enter judgment stating: "Judgment is entered in favor of Simpler Solar Systems, Inc., in the amount of $57,287.08, plus prejudgment interest at the applicable statutory rate of __4.75%__ from November 1, 2011."

4.  The clerk shall transmit a copy of this order to the Bankruptcy Court.

DONE AND ORDERED this ____2nd____ day of ___December___, 2013.


s/ William Stafford
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE